UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARPMAN FITNESS, LLC, d/b/a
ELEMENTS ROYAL OAK.,

    Plaintiff,

v.

CITY OF ROYAL OAK,

    Defendant.
_____/

Case No. 08-13207
Hon. Gerald E. Rosen

**OPINION AND ORDER REGARDING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     December 30, 2009

PRESENT: Honorable Gerald E. Rosen
United States District Judge

## I. INTRODUCTION

Plaintiff Carpman Fitness, LLC, d/b/a Elements Royal Oak commenced this action in Oakland County Circuit Court on June 23, 2008, alleging that Defendant City of Royal Oak improperly denied it a license to operate a massage establishment by selectively enforcing its ordinance regarding massage parlors. Plaintiff alleged due process and equal protection claims, and sought damages under 42 U.S.C. § 1983. Defendant timely removed the case to this Court on federal question grounds. See 28 U.S.C. §§ 1331, 1441.

On November 14, 2008, this Court granted in part and denied in part Defendant's motion to dismiss Plaintiff's complaint, leaving only Plaintiff's equal protection "class of one" claim. Through the present motion, Defendant now seeks summary judgment on Plaintiff's remaining claim. Defendant argues that because Plaintiff pled no contest to violating the city's massage establishment ordinance in January 2009, its equal protection claim is barred by the Heck doctrine. Defendant further asserts that, even if the claim were not barred, Plaintiff cannot establish that any similarly situated individuals or businesses were treated differently than Plaintiff. Plaintiff counters that this claim is not a collateral attack on its conviction for violating the massage establishment ordinance, and therefore is not subject to the Heck doctrine. It further argues that there is sufficient evidence to show that different standards were imposed upon Plaintiff, and that those standards are not rationally related to a legitimate government interest.

Having reviewed and considered Plaintiff's complaint, Defendant's motion, and Plaintiff's response to this motion, the Court has determined that oral argument is not necessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this matter will be decided on the briefs. This opinion and order sets forth the Court's ruling.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

In October 2006, Plaintiff Carpman Fitness, LLC's owner, Bruce Carpman, purchased the franchise rights to develop a therapeutic massage business under the name Elements Therapeutic Massage ("Elements") in Royal Oak, Michigan. The following year, Mr. Carpman entered into a five-year lease agreement for a property located on

Woodward Avenue in Royal Oak, planning to open and operate the Elements franchise at that site. The City of Royal Oak Code contains a Massage Establishment License and Regulation Ordinance (the "Massage Ordinance"), which mandates that massage businesses have a valid business license issued by the City of Royal Oak in order to operate. Royal Oak, Mich., Code § 447-3. The Ordinance also requires that all persons employed to practice massage obtain a massagist license. Id.

After obtaining the necessary variances from the local zoning board, but without obtaining massage or massagist licenses, Elements opened its doors to business on December 18, 2007. Although Plaintiff claimed not to have knowledge of the Massage Ordinance, an e-memo dated February 23, 2007, from the Royal Oak Planning Department instructed Mr. Carpman to apply for licensure under the Ordinance and explained that such licensure was required by the City. Mardy Stirling, the Deputy Director of Planning for the City of Royal Oak, wrote, "I would recommend that you review this Ordinance *early* in the process to ensure that you will comply with any licensing requirements." (Def.'s Reply to Resp. Ex. 3) (emphasis in original).

On December 19, 2007, a Royal Oak code enforcement officer visited the newly opened Elements franchise and advised the business manager there that the business and each of its individual massagists required licenses under the Massage Ordinance. Plaintiff alleges that the officer also said at that time that Plaintiff "could continue to operate business at the Property until such time as the license was obtained, and Royal Oak would not take any steps to shut down Elements." (Carpman Aff. ¶ 7.) The officer

3

testified that he did not discuss allowing the Elements franchise to stay open until it got a business license; rather, he told Plaintiff that he would give it time to "get the ball rolling," but that he would check with the clerk in a week or so "to see if the license had been obtained." (Gerald Karr Dep. 13:11-24, May 6, 2009.) The officer then checked on December 26, 2007, and found that Plaintiff had still not obtained the license from the city clerk's office, but continued to operate its business.

On January 24, 2008, the code enforcement officer issued Plaintiff a civil infraction ticket based on Plaintiff's failure to obtain a license under the Massage Ordinance. Plaintiff alleges that during this period the city clerk's office repeatedly failed to answer questions about the licensing process or improperly answered questions, stating, for example, that a doctor's letter was required for each individual massagist application. (Compl. ¶ 12; Carpman Aff. ¶¶ 8-9.)[1] Nevertheless, on February 7, 2008, Plaintiff submitted an application and a $1,000 check for a massage establishment license. No individual massagist license applications were submitted. In the interim, Plaintiff's Elements franchise remained open for business.

By March 19, 2008, all pertinent city departments had recommended approval of the license, and on March 26, 2008, the City Manager and the City Clerk issued a memorandum to the City Commission recommending approval of the license. The

---

[1] In its response to the request for admissions, Defendant acknowledged that the requirement for a physician's letter has since been dropped from the Massage Ordinance and that some of the information given to Mr. Carpman by employees at the city clerk's office may have been outdated. (Resp. to Pl.'s Combined Req. to Admit 2.)

4

application was considered at the April 14, 2008 meeting of the Commission.[2] In a four to three vote, the Commission denied the license for Plaintiff. The meeting minutes stated:

> BE IT RESOLVED, that the application for a massage establishment license for Elements Royal Oak . . . be denied. The basis for the denial is that the applicant is not of suitable character (as defined in the Massage Ordinance) to conduct or maintain the business of the City of Royal Oak, based upon the following:
>
> 1. The City's Massage Ordinance requires that a person obtain a massage business license before engaging in the business of massage, and that a person obtain a massagist's license before engaging in the practice of massage.
>
> 2. On February 23, 2009, Deputy Planning Director Mardy [sic] Stirling advised the applicant via e-mail that the proposed business would have to be licensed under the City's Massage Ordinance.
>
> 3. On May 15, 2007, the applicant was present during a Zoning Board of Appeals hearing on his petition for two zoning variances . . . when City Planner Doug Hedges stated a condition of approval of the variances that the applicant comply with a proposed business plan would be reviewed at the time that the applicant submitted an application for a massage establishment license under the City's Massage Ordinance.
>
> 4. On December 17, 2007, Code Enforcement Officer Gerald Karr advised the manager of the business that a massage establishment license was needed.
>
> 5. The applicant was open for business on January 24, 2008.

---

[2] The Commission first considered Plaintiff's license application at its April 7, 2008 meeting, where one Commissioner stated that Mr. Carpman had been cited for operating without a license in January, that a second citation had been issued the day of the meeting, and that none of the Elements massagists had applied for the applicable licenses. At the request of Plaintiff's counsel, the issue was postponed to the following meeting. (Def.'s Br. Ex. 3.)

6. On February 7, 2008, the applicant submitted an application for a massage establishment license for the business.

7. The applicant was open for business on April 7, 2008 [through April 14, 2008].

[. . .]

14. There are no individuals who are licensed to practice massage at the business.

15. The City Clerk has not received an application from any individual seeking to become licensed to conduct massage at the business.

(Def.'s Mot. for Summ. J. Ex. 4 p. 7-8.)

On April 17, 2008, a Royal Oak undercover police officer visited Elements and received a massage from Lauren Stocking, a massagist employed by Plaintiff. The same day, Plaintiff was charged with two violations of the Massage Ordinance: (1) operating a massage establishment without a license in violation of Royal Oak Code § 447-3(A); and (2) employing a massagist without a license in violation of Royal Oak Code § 447-3(B). On April 21 and 22, 2008, Plaintiff submitted license applications, along with the necessary fees, on behalf of five massagists employed by Plaintiff. Arrest warrants were nevertheless issued on May 1 at the request of the City, based on the April 17 incident. On May 4, 2008, Plaintiff shut down its Royal Oak business and began refunding membership and pre-paid services to its customers.

At a May 19, 2008 meeting, the City Commission voted to rescind its April 14 decision denying a license to Elements, to approve a massage establishment license for

Elements, and to approve the individual massage therapists licenses for the five individual massagists formerly employed by Plaintiff. Plaintiff claims that a majority of its individual therapists have since refused to return to work for Elements, "because of the criminal proceedings initiated by Royal Oak as well as the delay in the issuance of the licenses." (Carpman Aff. ¶ 17.)

Plaintiff filed this lawsuit in Oakland County Circuit Court on June 23, 2008, asserting *inter alia* an equal protection "class of one" claim because allegedly different standards were imposed upon Plaintiff than on other similarly situated businesses. The City of Royal Oak removed the matter to this Court on July 25, 2008.

On January 26, 2009, Plaintiff pled no contest to violating Royal Oak Code § 447-3(B) for employing massagists without licenses, in exchange for dismissal of the charge for operating a massage establishment without a license. It paid a fine of $150 and the case was closed.

### III. DISCUSSION

**A. The Standards Governing Defendant's Motion**

Through the present motion, the Defendant City of Royal Oak seeks summary judgment on Plaintiff's remaining 42 U.S.C. § 1983 claim. See Fed. R. Civ. P. 56. Under the pertinent Federal Rule, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court has explained, "the plain language of Rule 56(c)

mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. Pack v. Damon Corp., 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party "may not rely merely on allegations or denials in its own pleading," but "must — by affidavits or as otherwise provided in [Rule 56] — set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Moreover, any supporting or opposing affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." Pack, 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

**B.      Plaintiff Has Failed to Establish a Violation of the Equal Protection Clause.**

Although the first issue raised in Defendant's motion is applicability of the Heck doctrine in this case, the Court defers its consideration of this issue to first address the viability of Plaintiff's equal protection claim. Plaintiff alleges that it was denied equal protection under the laws as guaranteed by the Fourteenth Amendment because

8

Defendant imposed different standards on Plaintiff than the standards applied on similarly situated businesses.[3] In support of these claims, Plaintiff provides evidence of one other massage therapist who worked for at least two years without a license, then was granted a license. Defendant counters that the evidence does not support a finding of differential treatment, and that Plaintiff has failed to show that the City Commission's denial of Plaintiff's license application lacked any rational basis. The Court finds the Defendant's arguments well-taken.

    The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Generally, to prevail on a claim for violation of the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class or by burdening a fundamental right. Radvansky v. City of Olmsted Falls, 395 F.3d 291, 312 (6th Cir. 2005) (*citing* Vacco v. Quill, 521 U.S. 793, 799, 117 S. Ct. 2293 (1997)). The Supreme Court has also recognized that the Equal Protection Clause may give rise to a claim on behalf of a "class of one." Village of Willowbrook v. Olech, 528 U.S. 562, 120 S. Ct. 1073 (2000). To prevail under this theory, a plaintiff must show intentional treatment different from others similarly situated *and* the absence of a rational basis for

---

[3] In the November 14, 2008 order granting in part and denying in part Defendant's Motion to Dismiss, the Court warned that "these allegations are rather 'bare bones' in nature, and only narrowly surpass the pleading standard articulated by the Supreme Court in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007)." [Dkt. #6.]

9

the difference in treatment. Id. at 564. "A 'class of one' plaintiff may demonstrate that a government action lacks a rational basis in one of two ways: either by 'negativ[ing] every conceivable basis which might support' the government action or by demonstrating that the challenged government action was motivated by animus or ill-will." Warren v. City of Athens, 411 F.3d 697, 711 (6th Cir. 2005).

**1.    There is insufficient evidence of differential treatment of similarly situated massage establishments under the Massage Ordinance.**

Plaintiff claims that Defendant intentionally treated it differently from other businesses that operated without a license prior to seeking licensure under the Massage Ordinance. In support of this claim, Plaintiff relies almost exclusively on the affidavit and deposition of Melissa Ruffner, a massage therapist who operates Hands on Health, a massage establishment in Royal Oak.[4] Ms. Ruffner began operating her business in Royal Oak in October 2005 without a license. (Ruffner Aff. ¶¶ 2, 4.) She was later visited by a city official who informed her that she needed to obtain a license under the Massage Ordinance. (Ruffner Dep. 39:6-21, Oct. 6, 2009.) Within a few days, Ms. Ruffner went to the city clerk's office to obtain the requisite forms and begin the process of completing the massage establishment license application; she was under the

---

[4] Plaintiff also cites the sixteen massagist or massage establishment licenses that were granted during the same period that Plaintiff sought a license. Plaintiff suggests that these applications were granted without investigation as to whether any applicant had previously operated in Royal Oak without a license. However, there is nothing in the record to support this allegation. The licenses themselves do not reveal whether the applicants were even first-time applicants, like Plaintiff, much less what investigative procedures preceded the granting of the licenses.

impression that if she did not apply for a license the business could be shut down. (Ruffner Dep. 41:5-13.) The application process involved getting letters of recommendation, a police report, fingerprinting, and a physician's letter stating that the applicant was free of communicable diseases. (Ruffner Dep. 41:23-42:3.) Ms. Ruffner submitted the completed business and individual license applications on October 15, 2007, with the necessary fees, approximately two years after having opened her business. (Ruffner Dep. 42:19-43:2.) In the intervening period, she had continued to operate her business. (Ruffner Dep. 60:2-14.) Ultimately, in March 2008, the city clerk's office issued Ms. Ruffner and Hands on Health a massage therapist license and a massage establishment license. (Ruffner Aff. ¶ 4.)

By comparison, Plaintiff began operating without a license in December 2007, after having been notified nearly ten months earlier in an e-memo from the City Planning Department that licensure was necessary under the Massage Ordinance. Plaintiff was again notified by a code enforcement officer that it needed a massage establishment license to continue operating in December 2007. Although Plaintiff claims to have attempted to call the city clerk's office, the code enforcement officer found no evidence that, a week after his first visit, Plaintiff had obtained the necessary forms from the clerk's office. By late January 2008, when the code enforcement officer visited a second time, there was still no evidence that Plaintiff had obtained applications for the business or for individual therapists. Ultimately, Plaintiff submitted an application for a license on February 7, 2008, less than two months after the first visit of the code enforcement

officer, but almost a year after first learning of the licensure obligation. When the City Commission finally addressed the Elements franchise license application on April 14, 2008, none of the massage therapists employed by Plaintiff had yet submitted massage therapist license applications.

While there are parallels between Ms. Ruffner's experience and Plaintiff's, there are also important differences. Both incidents involve a massage therapy business operating without a license, and in both cases, the Defendant city ultimately granted licenses. Both Ms. Ruffner and Plaintiff were told or given the impression by city officials that without a license, they could not operate a massage establishment in Royal Oak. However, in Ms. Ruffner's case, she learned of this requirement once she was already operating her business, and she began the application process within several days of being notified. In Plaintiff's case, there is clear evidence that Mr. Carpman was notified of the licensure requirement nearly ten months before the Elements franchise opened for business. Yet Plaintiff did not initiate the application process until it was given a second and a third warning in December 2007 and January 2008 by a code enforcement officer. Ultimately, in denying the massage establishment license at its April 17, 2008 meeting, the Commission emphasized this ten-month period during which Plaintiff was aware of the licensure requirement but failed to even obtain application forms. The relevant period is thus not the length during which Plaintiff operated without a license, but rather the length of time it took Plaintiff to initiate the application process.

Plaintiff also claims that the City Commission improperly conditioned its grant of

12

the licenses on Plaintiff first closing its doors to business, whereas no such condition was imposed on Ms. Ruffner. This is a mischaracterization of the record. The Commission cited Plaintiff's continued operation of business following several warnings from the code enforcement officer as only one basis for its denial of the license. It also cited Plaintiff's failure to submit any applications for individual massagists as of April 2008. The record indicates that in the end the Commission granted Plaintiff its licenses once it had received applications for both the business establishment and each individual massagist. Although in the interim, Plaintiff closed the Elements franchise, there is no evidence to suggest that closing the business was either mandated by the Defendant city or a prerequisite for reconsideration of the license applications. Moreover, the comparison to Ms. Ruffner's case is inapposite, since unlike Plaintiff, Ms. Ruffner submitted completed applications for the business establishment license and the individual therapist license at the same time. In light of these facts, Plaintiff has failed to show intentional treatment different from others similarly situated.[5]

---

[5] To the extent that Plaintiff argues that the Defendant City more generally permitted some businesses to operate without a license, selectively enforcing the Massage Ordinance only against Plaintiff, such allegations are unsupported by the record. On the contrary, the record shows that Defendant sought to enforce the Massage Ordinance against other massage establishments prior to and during period in which Plaintiff was investigated. For example, the code enforcement officer who conducted the investigation into whether Plaintiff was operating without a license in December 2007 and January 2008 testified that he was also asked to investigate two other massage businesses for lack of a license. (Karr Dep. 25:20-26:2.) These investigations occurred within the same time frame as the investigation of Plaintiff's establishment, though ultimately the other businesses were not prosecuted because the investigation revealed that one of the locations was not operating a massage therapy business and the other location was vacant, having never opened for business. (Karr Dep. 26:9-28:14.) The Defendant city has also

**2.      Even assuming Plaintiff can prove differential treatment, Plaintiff has failed to show that the Defendant city's actions lacked any rational basis.**

Assuming that Ms. Ruffner's affidavit and deposition are sufficient to establish differential treatment, Plaintiff cannot establish that the Defendant city's denial of the business establishment license lacked a rational basis.  The Sixth Circuit has explained:

> Under rational basis review, the defendant has no obligation to produce evidence to sustain the rationality of its actions; its choice is presumptively valid and may be based on rational speculation unsupported by evidence or empirical data. The burden falls squarely to the plaintiff, who must overcome the presumption of rationality by alleging that the defendant acted in a manner clearly contrary to law.

Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, 470 F.3d 286, 298 (6th Cir. 2006) (quotations and citations omitted).  Plaintiff cannot satisfy this burden.  More specifically, a "'class of one' plaintiff may demonstrate that a government action lacks a rational basis in one of two ways: either by 'negativ[ing] every conceivable basis which might support' the government action or by demonstrating that the challenged government action was motivated by animus or ill-will."  Warren v. City of Athens, 411 F.3d 697, 711 (6th Cir. 2005).  Plaintiff has done neither.

As a general matter, municipalities clearly have a legitimate concern for the

---

previously brought criminal complaints against massage establishments or individual massagists for operating without a license.  (Resp. to Pl.'s Combined Req. to Admit 1-2.)  On at least four occasions, undercover police officers visited different massage therapy establishments to determine if they were operating without the proper licensure, in 1996, 2007, and 2008.  (Id. 4-5.)  This evidence strongly contravenes Plaintiff's allegations that the Massage Ordinance was not enforced against other similarly situated massage businesses in Royal Oak.

14

operation of business in a lawful manner. "This concern may be protected by refusal to license a business which continually operates in violation of city or state laws that jeopardize the health, safety, or welfare of the community." Pentco, Inc. v. Moody, 474 F. Supp. 1001, 1006 (D.C. Ohio 1978). In this case, the Massage Ordinance dictates that the City of Royal Oak can only refuse an application for cause. Royal Oak, Mich., Code § 447-9. "Cause" includes, but is not limited to:

> A.  A determination of lack of suitable character, or a failure of the proposed licensed premises to meet applicable codes and ordinances.
>
> [. . .]
>
> D.  Any material violation of this chapter or of the regulations authorized herein.
>
> E.  Any violation of federal or state law or local ordinance which creates a risk to the health safety or welfare of the community, or brings into question whether the licensee is of suitable character to operate the business.

Id. As discussed above, the City Commission gave at least three different legitimate examples of ways in which Plaintiff had either violated the Code, or shown a lack of suitable character: (1) the business operated without a license despite having been notified nearly ten months before opening that licensure was required; (2) the business operated without a license after being visited by a code enforcement officer at least twice; and (3) none of the massage therapists employed by Plaintiff were licensed, nor had the City received a single individual therapist license application by the time of the April 2008 meeting when the business establishment license application was considered. Although Plaintiff disputes exactly when it learned of its obligation to obtain licenses, it cannot

15

negate the fact that an e-memo was sent to Mr. Carpman in February 2007, while planning and development for the Elements franchise was underway. Nor can Plaintiff negate the fact that following the first visit of the code enforcement officer, it did not immediately obtain application materials from the city clerk's office. Finally, Plaintiff cannot negate that it had not obtained individual massagist licenses for any of its massage therapists as of the April 2008 City Commission meeting. Whether the City Commission ought to have granted Plaintiff some leeway in light of the difficulties Plaintiff faced in communicating with the city clerk's office is beyond the scope of this Court's review. Heller v. Doe by Doe, 509 U.S. 312, 319, 113 S. Ct. 2637 (1993) (reiterating the holding that rational-basis review in equal protection analysis "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.").[6]

In light of the foregoing, the Court is unable to conclude that these bases for the City Commission's denial were "clearly contrary to law." Plaintiff has failed to show that it may prevail on its claim for relief under the Equal Protection Clause because, based on the facts alleged, Plaintiff will not be able to prove that Defendant lacked a rational basis for its actions.

## B.     The Court Need Not Reach The Heck Doctrine

Section 1983 establishes tort liability for the deprivation of federal rights by persons acting under color of state law. 42 U.S.C. § 1983. Defendant argues that

---

[6] Plaintiff has neither alleged nor provided any evidence that the City Commission's decision was motivated by ill will.

Plaintiff's section 1983 action is barred by Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364 (1994). In Heck, the Supreme Court held:

> . . . in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. at 486-87 (footnotes omitted). Defendant argues that the Heck doctrine is applicable here because: (1) Plaintiff pled no contest to violating the Massage Ordinance, (2) a no contest plea subjects a defendant to all consequences of a conviction, see People v. Graham, 223 N.W.2d 80 (Mich. Ct. App. 1974), Walker v. Schaeffer, 854 F.2d 138 (6th Cir. 1988); and (3) this conviction has not been invalidated. Consequently, Defendant contends that a ruling in Plaintiff's favor on the equal protection claim—essentially a claim of selective enforcement of the Massage Ordinance—would imply the invalidity of the conviction. Thus, Defendant argues that, under Heck, Plaintiff's challenges to the selective enforcement of the Massage Ordinance are not cognizable under section 1983. Plaintiff counters that the original complaint had nothing to do with Plaintiff's eventual conviction, that it does not seek to recover damages for the conviction, and that the section 1983 claim is therefore distinct from an attack on the conviction itself.

Because the Court finds that Plaintiff cannot prevail on its claim under the Equal

Protection Clause, it need not reach the issue of whether the Heck doctrine would bar this claim.

## IV.  **CONCLUSION**

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's July 29, 2009 Motion for Summary Judgment [Dkt. #24] is GRANTED.

s/Gerald E. Rosen
Chief, United States District Judge

Dated: December 30, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 31, 2009, by electronic and/or ordinary mail.

s/Ruth A. Brissaud
Case Manager
(313) 234-5137